[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 22, 2006
THOMAS K. KAHN
CLERK

No. 05-14096
Non-Argument Calendar

_____

D. C. Docket No. 04-23186-CV-JLK

RICKY TONNESEN,

Plaintiff-Appellant,

versus

MARLIN YACHT MANUFACTURING, INC.,
GIUSEPPE GISMONDI,
a.k.a. Joe Gismondi,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 22, 2006)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Ricky Tonnesen appeals the district court's entry of an order dismissing his suit against Marlin Yacht Manufacturing, Inc. ("Marlin Yacht"), and Guiseppe Gismondi, the president of Marlin Yacht (collectively referred to as "Defendants"). Tonnesen argues that the district court erred in (1) dismissing his case based on an affidavit that the Defendants submitted without service to him, rendering it an ex parte communication; (2) denying his motion to strike the affidavit and motion to vacate the judgment; and (3) entering a final order as to his claims because issues of material fact remain. After review, we reverse.

## I. BACKGROUND

We recount in detail the procedural background, as it clearly shows why we must reverse.

### A. First Lawsuit in Florida

In May 2000, plaintiff Tonnesen filed in the district court for the Southern District of Florida a lawsuit against the Defendants relating to a yacht purchased by Tonnesen from Marlin Yacht in 1996. In 2001, the parties entered into a settlement agreement (the "Agreement") resolving that litigation.

The Agreement required the Defendants to completely restore and repair Tonnesen's yacht. Specifically, the Defendants were required, among other things, to (1) either repair Tonnesen's engines so that they tested at a compression of 120

2

pounds, or, if the engines failed to meet the specifications, replace the engines with new ones of "like kind, quality and appearance"; (2) complete their obligations under the Agreement within 60 days of being notified that the vessel was ready for Marlin Yacht to take possession; (3) pay Tonnesen $100/day for every day over 60 days that they had possession of the vessel; and (4) deliver the vessel to Tonnesen upon the decision of Tonnesen's marine surveyor that the repairs outlined in the Agreement had been made.

**B.     Second Lawsuit Filed in Texas**

In February 2003, Tonnesen filed suit against the Defendants in Texas state court, alleging breach of contract and anticipatory breach of contract with respect to the Agreement.  Tonnesen's suit also contained claims of fraudulent inducement to enter a contract and conversion.  In March 2003, the Defendants removed the action to federal court in Texas.

In March 2004, Tonnesen filed a motion for summary judgment and several exhibits, including an affidavit and report from marine surveyor James McCrory. As detailed in his report and affidavit, McCrory had inspected the yacht on September 30, 2001, and found that the Defendants had failed to perform the required repairs, including the requirement of compression at 120 pounds.

Tonnesen also filed the affidavit and report of marine surveyor Robert

Reinhold. As outlined in his affidavit, Reinhold went to Marlin Yacht, at Tonnesen's request, to retrieve the yacht, but Gismondi refused to release the yacht without a written release, signed by Tonnesen, accepting the yacht "as is." Reinhold's affidavit also stated that he had inspected the yacht in July 2003. Reinhold's report from that inspection did not address the condition of the engines but noted many other conditions still requiring repair. The Texas district court denied Tonnesen's summary-judgment motion, determining that "[g]enuine issues of material fact exist with respect to all claims."

## C.    Second Lawsuit Transferred to Florida

On December 10, 2004, the district court for the Northern District of Texas transferred the action to the district court for the Southern District of Florida, where the case was assigned to the same judge who had presided over the previous lawsuit between the parties. On March 10, 2005, the Florida district court issued an order requiring the Defendants, Gismondi and Marlin Yacht, to brief why they failed to abide by the Agreement and why they should not be held in contempt for failing to perform the Agreement.[1]

---

[1]The order also required Tonnesen to brief why he had failed to proceed with an application for contempt of court until almost five years after the Agreement was signed. Tonnesen's brief responded, inter alia, that he did not believe the Agreement was enforceable through contempt because the district court's order in the previous action had not ordered the Defendants to perform their obligations.

Upon receipt of the order, Gismondi, acting on behalf of himself and Marlin, wrote a letter to the district court arguing that they had substantially complied with the Agreement. Gismondi asserted that there was a typographical error in the Agreement that made compliance impossible; that is, the 120-pound engine compression, required by the Agreement, was higher than the engines on the yacht were designed to produce. Gismondi attached to his letter a copy of the engine specifications showing a compression of 90 to 110 pounds.

The Defendants also submitted through counsel a brief asserting that there were genuine issues of material fact as to whether they had complied with the Agreement, which would make a holding of contempt improper.[2] The Defendants attached the following documents to their brief, inter alia,(1) an affidavit from Gismondi asserting that they had complied with the Agreement inasmuch as was possible, that the Defendants had attempted to get Tonnesen to reclaim the vessel, and that Tonnesen neither picked up the vessel, sent an individual to check on the repairs to the vessel, nor provided his agent with identification to prove that he could pick up the vessel on Tonnesen's behalf; and (2) an affidavit from a technician who stated that the engines on the vessel could not be made to perform at the level specified in the Agreement.

---

[2]The Defendants noted the Texas district court's prior determination that material issues of fact precluded summary judgment as to all claims.

Tonnesen asserted in his brief that the only reason he could see for the Defendants' non-performance was that they had never intended to perform their obligations. Tonnesen argued that a defense of impossibility was inapplicable because the Agreement stipulated that, if the engines on the boat did not meet specified standards, they would be replaced.

**D.    Florida District Court's April 15, 2005, Order**

Upon receipt of both briefs, on April 15, 2005, the district court entered an order enforcing the Agreement. The terms of the order are important to this appeal. The order provided that the Defendants shall perform the work within sixty days or provide affidavits within thirty days stating either that the work was completed or why it was impossible to perform the work, as follows:

> Defendants shall abide by their agreement and perform the work outlined in paragraphs 1-10 of the settlement agreement within sixty (60) days of the date of this Order. If the Defendants have already performed the work, they shall provide the Court with Affidavits stating the specific work completed. If any of the work is impossible to perform, Defendants shall provide the Court with Affidavits outlining: (1) why that specific obligation has not been fulfilled; and (2) what efforts have been taken in an attempt to fulfill an obligation that Defendant allegedly can not complete, and the reason for impossibility of performance. Defendants shall provide the Court with their Affidavits within thirty (30) days of the date of this Order.

Thus, the Defendants' affidavits, if any, were due by May 16, 2005.

On June 13, 2005, Gismondi, proceeding <u>pro se</u> on behalf of himself and

6

Marlin Yacht,[3] submitted an affidavit to certify compliance with the Agreement. In the affidavit, Gismondi stated that all portions of the Agreement had been fulfilled except the 120-pound-engine-compression requirement. Gismondi again asserted that, according to manufacturer's specifications, it was not possible to reach 120 pounds of compression. Gismondi attached to the affidavit: (1) a letter certifying the electronics on the vessel met specifications; (2) a letter certifying the required motor inspection, compression test, spark test, and gear inspection, and showing results within the manufacturer's specifications; and (3) a copy of the service manual, which specified 80 to 90 pounds compression for the engines. The affidavit was signed and notarized, but did not contain a certificate of service. Instead, typed at the bottom of the affidavit, was "cc:" indicating that a carbon copy had been sent to Tonnesen's counsel.

### E. Florida District Court's June 17, 2005, Order

On June 17, 2005, four days after receiving the affidavit, the district court, acting sua sponte, entered an order dismissing the case with prejudice. The district court found, based on the Gismondi affidavit, that the provision in the Agreement requiring that the engines reach 120 pounds of compression was an impossible task

---

[3]On April 25, 2005, the Defendants' attorney filed a motion to withdraw as counsel. The district court granted this motion, and gave the Defendants twenty days to procure new counsel. The Defendants never hired a new attorney in the district court or for this appeal.

and the Agreement had been fully performed.

Upon receipt of the dismissal, Tonnesen promptly filed two motions. On June 30, 2005, Tonneson filed a motion to strike the affidavit, contending that (1) the affidavit was filed more than 30 days after the district court's order and thus was untimely and should not have been accepted; and (2) the Defendants failed to serve a copy of the affidavit as required by Federal Rule of Civil Procedure 5, and thus the affidavit was not properly before the court and should be stricken. Tonnesen further asserted that he had not received the affidavit nor even been aware of its existence until the dismissal order.

Also on June 30, 2005, Tonnesen filed a motion to vacate the judgment, arguing, inter alia, that the district court erroneously had (1) failed to give the required notice that Tonnesen's claims were set for dismissal; (2) thrown out causes of action that were unrelated to whether the Agreement had been breached; and (3) based its decision on an ex parte communication from the Defendants that was not properly before the district court.

On July 1, 2005, the district court summarily denied both motions. Tonnesen timely appealed.

## II. DISCUSSION

On appeal, Tonnesen argues that the district court (1) violated his procedural

due-process rights by sua sponte dismissing his claims without notice; and (2) erred in dismissing all his claims based on the Gismondi affidavit. We agree with Tonnesen that the district court committed reversible error.

First, the district court based its dismissal decision on the Gismondi affidavit, and Tonnesen asserts – and the Defendants do not dispute[4] – that Tonnesen was never served with the affidavit, as required by Federal Rule of Civil Procedure 5. Fed. R. Civ. P. 5(a) (requiring generally that "every pleading subsequent to the original complaint . . . , every paper relating to discovery required to be served upon a party . . . , every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties"). Although the affidavit contained a "cc:" indicating that it was served on Tonnesen's counsel, there was no certificate of service attached to the affidavit, as required by Rule 5. Fed. R. Civ. P. 5(d) ("All papers after the complaint required to be served upon a party, together with a certificate of service, must be filed with the court within a reasonable time after service . . . .") (emphasis

---

[4]The Defendants have failed to file a brief on appeal. The Defendants also did not respond to Tonnesen's motions in the district court, but we note that the district court ruled the day after Tonnesen filed the motions.

added).[5]

Because the affidavit was not properly served on Tonnesen or his counsel but presented only to the district court, the affidavit was in effect an ex parte communication. "Our adversarial legal system generally does not tolerate ex parte determinations on the merits of a civil case." Application of Eisenberg, 654 F.2d 1107, 1112 (5th Cir. Unit B Sep. 1981). "The right to due process 'encompasses the individual's right to be aware of and refute the evidence against the merits of his case.'" Vining v. Runyon, 99 F.3d 1056, 1057 (11th Cir. 1996) (quoting Eisenberg, 654 F.2d at 1112). Accordingly, this Court has established that a district court's consideration of ex parte submissions "to determine the merits of litigation is allowable only when the submissions involve compelling national security concerns or the statute granting the cause of action specifically provides" for ex parte resolution of the dispute. Id. Because neither circumstance exists in this case, the district court erred in considering the Gismondi affidavit and abused

---

[5]We also note that Local Rule 5.2(A) for the United States District Court for the Southern District of Florida requires that every paper Fed.R.Civ.P. 5(a) required to be served on other parties "shall include a certificate of service stating the persons or firms served, their relationship to the action or proceeding, the date, method, and address of service. Signature by the party or its attorney on the original constitutes a representation that service has been made." N.D. Fla. R. 5.2(A).

its discretion in denying Tonnesen's motion to strike the affidavit.[6]

Further, the district court <u>sua sponte</u> dismissed the case based on the Gismondi affidavit without giving Tonnesen any opportunity to review or respond to the affidavit and without giving notice to Tonnesen of its intention to consider dismissing the case. Moreover, the <u>sua sponte</u> dismissal was with prejudice. We readily conclude that the district court committed reversible error in so doing. <u>See Jefferson Fourteenth Assoc. v. Wometco de Puerto Rico, Inc.</u>, 695 F.2d 524, 526 (11th Cir. 1983) (noting that courts may exercise their inherent power to dismiss a suit based on a lack of merit "only when the party who brought the case has been given notice and an opportunity to respond").

Accordingly, we reverse and vacate the district court's June 17, 2005, order dismissing Tonnesen's claims with prejudice. We also conclude that the district court erred in not granting Tonnesen's motion to strike the Gismondi affidavit and motion to vacate the judgment and thus reverse and vacate the district court's July 1, 2005, order denying those motions. On remand, the district court shall conduct further proceedings consistent with this opinion and shall strike and not consider the Gismondi affidavit currently in the record.[7]

---

[6]We review a district court's denial of a motion to strike an affidavit for abuse of discretion. <u>Telfair v. First Union Mortg. Corp.</u>, 216 F.3d 1333, 1337 (11th Cir. 2000).

[7]Because we conclude that the district court erred in considering the Gismondi affidavit and in granting judgment on that basis, we need not consider Tonnesen's remaining arguments at

**REVERSED, VACATED, AND REMANDED.**

---

this time.  Instead, we leave it to the district court to determine in the first instance the merits of Tonnesen's claims.